UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGAR AYALA, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, AND TRANS UNION LLC, <br><br> Defendants. | Case No. 22-cv-04935 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edgar Ayala sues Experian Information Solutions, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § *et seq*. [5]. Defendant Experian Information Solutions, Inc. moves for summary judgment, [38], and Plaintiff cross-moves for partial summary judgment, [46]. For the reasons explained below, this Court grants Defendant's motion and denies Plaintiff's motion.

### I. Factual Background[1]

Plaintiff's Fair Credit Reporting Act ("FCRA") claim arises from Defendant's alleged inaccurate reporting of information on his consumer collection account. Defendant is a consumer collection agency subject to the FCRA, and Plaintiff is a consumer as defined by the FCRA. [48] ¶ 1; 15 U.S.C. §§ 1681a(c), (f).

---

[1] The Court draws these facts from Defendant's Local Rule 56.1 statement of undisputed material facts, [40], Plaintiff's response to Defendant's statement of material facts, [48], Plaintiff's statement of additional facts, [47], and Defendant's response to Plaintiff's statement of additional facts and statement of additional facts, [52].

As a consumer collection agency, Defendant does not originate credit information, make loans, or decide who receives credit. [48] ¶ 5. Defendant compiles credit, loan, or other account information provided by "furnishers," which are usually the consumer's creditors. *Id.* ¶ 6. Defendant stores this information, and, in response to permissible requests from persons who provide identifying information about a consumer, assimilates this credit information into "consumer reports" or "credit file disclosures" that summarize the credit history of that consumer. *Id.* These reports are typically furnished by Defendant to credit grantors, insurers, or employers, for the purpose of evaluating a consumer's eligibility for credit. [40] ¶ 19.

On July 21, 2017, Plaintiff opened a "Home Depot" branded Citibank, N.A. consumer credit account. [48] ¶ 18; [52] ¶ 1. Plaintiff subsequently defaulted on his payments, and as of May 2019, the account was charged-off. [48] ¶ 18. Citibank, the original creditor, subsequently sold the account to Cavalry Portfolio Services, LLC, a debt collector and data furnisher, for collection. [48] ¶ 23; [52] ¶ 3. As a result, Cavalry began furnishing information related to the account to credit reporting agencies, including Defendant. [52] ¶ 3.

In October 2021, Cavalry reported to Defendant that it opened a collection account for Plaintiff on September 23, 2021. [48] ¶ 23. Cavalry reported to Defendant the original creditor for the account as Citibank; an open date of September 23, 2021; and a date of first delinquency of November 11, 2018. *Id.* Plaintiff's Cavalry account reflected a purge date of August 2025. *Id.*

When a debt buyer like Cavalry opens a collection account, it reports the "open date" of the account as the date it acquired the debt. [48] ¶ 16. This date is distinct from the date the original creditor opened the account, and thus does not reflect the age of the debt. *Id*. By contrast, the "date of first delinquency" with the original creditor that led to the account being sold or transferred for collection tracks the age of the debt. *Id*. Relevant here, under the FCRA, the account can only stay on record up to seven years following the date of first delinquency with the original creditor.[2] *Id*. The purge date is the date that the account must be removed from record after the expiration of the seven-year period. *Id*.

On April 13, 2022, Plaintiff, through counsel, sent a letter to Defendant stating that Defendant was reporting inaccurate credit information regarding Plaintiff's Cavalry account, specifically the opening date of the account and the date of first delinquency. [47-3] at 3. Defendant processed the letter on April 20, 2022. [48] ¶ 24.

The letter indicates that the open date on Plaintiff's Cavalry account was incorrect because "the furnisher is reporting the account open September 23, 2021," but "according to the creditor, the account was open July 21, 2017." *Id*. In addition, the letter states that "the furnisher is reporting a date of first delinquency of November 11, 2018," but according to the creditor, Citibank, "the date of first delinquency is actually November 1, 2018." *Id*.

In response to the letter, on April 27, 2022, Defendant sent an Automated Consumer Dispute Verification form ("ACDV") to Cavalry. [48] ¶ 25. The ACDV

---

[2] The seven-year period begins 180 days after the date of first delinquency. U.S.C. § 1681c(c)(1)).

included the dispute reason: "112-Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account." *Id.*

An ACDV is a common method used by Defendant and other consumer reporting agencies to communicate a consumer dispute to a furnisher. [48] ¶ 11. An ACDV identifies the consumer and basis for the consumer's dispute, and asks the furnisher to verify, amend, or delete the reported information. *Id.* After receipt of an ACDV, a furnisher completes an investigation and returns the ACDV to Defendant with findings, instructing Defendant to leave the item as it is, delete the item, or change or update it in some specified manner. [48] ¶ 13. Based upon the furnisher's response, Defendant makes any appropriate changes or updates. [48] ¶ 14. Defendant then sends the consumer a summary reflecting the results of its reinvestigation, which typically includes a credit file disclosure. *Id.*

Cavalry responded to Defendant on April 28, 2022. [48] ¶ 25. In the "RESPONSE" section, Cavalry indicated "Account information accurate as of date reported." [48] ¶ 25; [41-3]. That same day, Defendant mailed the dispute results to Plaintiff, explained that Cavalry had verified the disputed information was accurate, and in large, bolded letters at the top of the first page wrote, "PLEASE CONTACT CREDIT GRANTOR AT -9143473440-." [48] ¶ 26. Plaintiff could not recall if he contacted the credit grantor. *Id.*

On July 1, 2022, Defendant received an Automated Universal Data ("AUD") form from Cavalry. [48] ¶ 27. An AUD form is a document that data furnishers initiate to process out-of-cycle credit history updates. *Id.* The AUD form from

Cavalry reported an open date of September 23, 2021, and a date of first delinquency of November 11, 2018. *Id.*

Plaintiff's consumer disclosure, dated September 7, 2022, reveals three hard inquiries on this account. [48] ¶ 34. Of those three inquiries, one creditor, One Main Financial, denied him credit. *Id.* ¶ 35. The other two creditors extended credit, but at a higher interest rate. *Id.* Plaintiff acknowledged that having a collection account on his file would harm his credit and make it more difficult to get credit. *Id.* He further agreed that the Cavalry collection account would not be removed until August 2025, so it would have been on his credit report at the times he applied for credit regardless of the date that Defendant reported. *Id.* ¶ 36.

On August 2, 2022, Plaintiff sued Defendant in state court, *see* [1-1], and Defendant removed the case on September 13, 2022.[3] [1]. Plaintiff alleged that Defendant, with respect to Plaintiff's Cavalry account, "willfully or negligently failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file" in violation of 15 U.S.C. § 1681e(b). [1-1] ¶ 50. Plaintiff further alleged that Defendant "willfully or negligently failed to conduct a proper and reasonable reinvestigation concerning the inaccurate information in Plaintiff's credit report after receiving notice of the dispute from Plaintiff, in violation of 15 U.S.C. § 1681i(a)(1)." *Id.* ¶ 42. Defendant now moves for summary judgment on all claims, [39], and Plaintiff cross-moves for partial summary judgment on the issue of whether Defendant violated 15 U.S.C. § 1681e(b), [46].

---

[3] Plaintiff's state court complaint also named Trans Union and Equifax, *see* [1-1], but Plaintiff voluntarily dismissed these other Defendants. *See* [22], [36], [18], [20].

## II. Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must construe the record "in the light most favorable to the nonmovant" and avoid the "temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). In a case involving cross-motions for summary judgment, the Court construes "all inferences in favor of the party against whom the motion under consideration is made." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

If the evidence is "merely colorable, or is not significantly probative," *Anderson*, 477 U.S. at 249 (citations omitted), or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. Analysis

Plaintiff alleges that Defendant violated 15 U.S.C. § 1681e(b) by willfully or negligently reporting inaccurate information on Plaintiff's credit report and violated

15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation into Plaintiff's dispute. In its motion, Defendant argues there is no evidence that Defendant reported inaccurate information and, even if it did, Plaintiff's claims fail because he has suffered no damages. Further, Defendant argues it cannot be liable under the FCRA because it followed reasonable reporting procedures and, once Plaintiff informed it of the alleged inaccuracies, it reasonably reinvestigated Plaintiff's dispute. The Court considers each argument in turn.

### A. Reporting of Accurate Information under 15 U.S.C. § 1681e(b)

Initially, Plaintiff alleged that Defendant violated 15 U.SC. § 1681e(b) by inaccurately reporting the opening date and the date of delinquency for a specific line of credit on Plaintiff's credit report. [1-1] ¶¶ 22–25. In response to Defendant's motion for summary judgment, which argues that there was no inaccuracy on Plaintiff's credit report, Plaintiff now claims that Defendant violated § 1681e(b) by providing two different versions of his credit report containing different information depending upon who requested the report and from which platform. [46] at 7.

To state a claim under § 1681e(b), Plaintiff must first demonstrate that his credit report contained inaccurate information. *Denan v. Trans Union LLC*, 959 F.2d 290, 294 (7th Cir. 2020); *see also Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800, 811 (7th Cir. 2023) ("A CRA's liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages.").

In the complaint, Plaintiff alleged that both the account's opening date and its date of delinquency were inaccurate on his credit report. [1-1] ¶ 22. But, as Defendant correctly notes, Plaintiff admitted during his sworn deposition that the opening date of the account was accurate, [40-5] at 51:1–15, and he has otherwise failed to point to any evidence supporting his claim that the delinquency date is inaccurate. Instead, Plaintiff has abandoned this claim and now argues in response to Defendant's motion that two different consumer reports exist, which contain different information. Thus, at least one of them must be inaccurate. [46] at 7.

When a plaintiff introduces a new theory in opposition to summary judgment, the Court must first consider "whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (citing *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014)). Plaintiff's attempt to introduce new alleged inaccuracies in his report falls into the former category and constitutes, in effect, an attempt to amend his complaint through his argument. *See id.* The Court declines to accept Plaintiff's attempted amendment, especially because, as discussed below, such an amendment would be futile. *See id.* (finding a "district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims").

Even if the Court considered Plaintiff's new factual allegations, the record does not support a claim under § 1681e(b). Plaintiff argues that the disclosure he received as a consumer from Experian contained different information from the consumer report that Experian produced. Plaintiff claims that if he accesses his own consumer

report through Experian's website, it states the "high balance" on his account is $0.00 but that his recent balance is $777, a blatant contradiction. Further, the account lists a monthly payment of $0. [46] at 7. Not only are these inaccuracies obvious on their face, Plaintiff argues, but this information is different from the information contained in a consumer report that would be provided to a third-party company or creditor. The iteration of his credit report produced by Defendant states that the "high balance" and "monthly payment" are "not reported," a clear contradiction to the information provided in the report Plaintiff accessed himself. *Id.*

Even assuming such a discrepancy constituted an inaccuracy in Plaintiff's report, it would not constitute a violation of the FCRA. As Defendant states, and Plaintiff does not dispute, the "consumer report" Plaintiff accessed through the website "www.experian.com" did not come from Defendant, but rather from a different Experian company. [52] at 11; [52-1] ¶ 8; [40-2] at 64:15−65:6. Defendant cannot be liable for any discrepancies between the report from another entity and its own credit report. Further, both of the reports Plaintiff references are not consumer reports, as defined by the FCRA, but rather consumer disclosures, which display credit information in plain language to be easily interpreted by consumers. [52] at 10−11. As a result, these documents cannot form the basis of a claim under § 1681e(b), which refers only to "consumer reports." [4]

---

[4] To qualify as a "consumer report" under the FCRA, the information must be disclosed to a third party, such as a potential creditor, for the purpose of serving as a factor in establishing the consumer's eligibility for credit or for other statutorily enumerated purposes. 15 U.S.C. § 1681a(d)(1); *see also Wantz*, 386 F.3d at 834.

Plaintiff has also failed to demonstrate that he suffered any damages due to the allegedly inaccurate reports. As an initial matter, Plaintiff points to no evidence that Defendant provided an inaccurate consumer report to any third party and, therefore, cannot support a claim under FCRA. *Chuluunbat v. Experian Info. Solutions, Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both" § 1681e(b) and § 1681i(a) "is that there must be an inaccuracy in the consumer's credit report."); *see also Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated by other grounds by Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) (denying damages because plaintiff "has put forth no evidence that Experian disclosed his credit information to a third party").

Even if his report had contained inaccuracies and had been sent to a third party, Plaintiff cannot demonstrate that such disclosure caused him harm. Plaintiff testified during his deposition that one creditor, One Main Financial, denied him credit based upon his credit report and that two other creditors charged him a higher interest rate based upon his credit report. [46] at 15. But Plaintiff cannot point to any evidence in the record that the credit denial or any increased cost of credit were caused by cited inaccuracies contained in a credit report produced by Defendant. *See Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (denying damages where plaintiff failed "to present evidence that any of the creditors who denied him credit after receiving a report on him and his brother from Trans Union did so because of the report").

Thus, the Court grants Defendant's motion for summary judgment on Plaintiff's § 1681e(b) claim.

### B. Reasonable Reinvestigation under 15 U.S.C. § 1681i(a)

Defendant also seeks summary judgment on Plaintiff's § 1681i(a) claim. Once a consumer disputes information on his consumer report, the FCRA requires credit reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a). Plaintiff does not contest that Defendant performed a reinvestigation but alleges that Defendant's reinvestigation was not reasonable.

As with claims brought under § 1681e(b), Plaintiff must still demonstrate that Defendant reported inaccurate information to a third party and that such report caused him harm. *See Wantz*, 386 F.3d at 834; *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) ("Before any discussion of the reasonableness of the reinvestigation is necessary, however, Ruffin-Thompkins must show that she 'suffered damages as a result of the inaccurate information.'") (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)); *Chuluunbat*, 4 F.4th at 567 ("A threshold requirement for claims under both" § 1681e(b) and § 1681i(a) "is that there must be an inaccuracy in the consumer's credit report.").

The parties agree that, in the dispute letter sent to Defendant on April 13, 2022, Plaintiff contested only the opening date of the account and the date of first delinquency. [52] ¶ 8. Upon receiving Plaintiff's dispute, Defendant sent an ACDV

form to the furnisher, Cavalry, which attached Plaintiff's dispute letter and corresponding documents. *Id.* ¶ 11; [48] ¶ 25. Cavalry responded to Defendant the next day confirming the accuracy of Plaintiff's account information. *Id.* ¶ 13.

But, as discussed above, Plaintiff no longer contests the accuracy of the opening date of the account or the date of first delinquency; nor could he, based upon the record. Plaintiff cannot point to any evidence that Defendant reported inaccurate information that was the subject of Plaintiff's dispute or that any such report caused him harm. *See Chaitoff*, 79 F.4th at 811 ("A CRA's liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages."); *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 689 (7th Cir. 2019) ("To bring a successful claim, the consumer must also show that she suffered injury as a result of any inaccurate information.").[5] Thus, Plaintiff's § 1681i(a) claim fails for the same reasons explained in this Court's analysis of Plaintiff's § 1681e(b) claim.

The Court grants Defendant's motion for summary judgment on Plaintiff's claim under § 1681i(a).

---

[5] Plaintiff's new factual allegations that Defendant issued two different credit reports containing different information cannot form the basis of a claim under § 1681i(a) because the statute only requires a credit reporting agency to perform a reasonable reinvestigation into disputed information of which Plaintiff notified it. *See* 15 U.S.C. § 1681i(a); *see also Aldaco*, 921 F.3d at 690 (noting that credit reporting agency "had a duty to reinvestigate only whether 'disputed information' was inaccurate"). Because Plaintiff did not dispute this information with Defendant, it cannot support a claim under § 1681i(a).

## IV. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment, [38], and denies Plaintiff's cross-motion for partial summary judgment. Civil case terminated.

Dated: March 28, 2024

Entered:

John Robert Blakey
United States District Judge